UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DURKEE,

    Plaintiff,

    v.

FORD MOTOR COMPANY,

    Defendant.

_____/

No. C 14-0617 PJH

**ORDER DENYING SPECIAL MOTION TO STRIKE**

Defendant's special motion to strike the complaint pursuant to California Code of Civil Procedure § 425.16 came on for hearing before this court on July 30, 2014. Plaintiffs Michael Durkee and Leslie Durkee appeared by their counsel Richard Wirtz, and defendant Ford Motor Company ("Ford") appeared by its counsel Frank Kelly and Amir Nassihi. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion.

## BACKGROUND

In 2004, plaintiff Michael Durkee purchased a 2005 model year F-250 Super-Duty Turbo Diesel Engine Truck from Ford of Marin for a total sales price of over $60,000. After encountering "consistent and substantial problems," plaintiffs sought repurchase or replacement from Ford.[1] Ford offered to repurchase or replace the truck in a letter that

---

[1] In a declaration filed in opposition to the present motion, Leslie Durkee states, "[W]e have experienced significant problems with the engine, in that it loses complete power, overheats, and smokes (requiring a tow-in)." Durkee Decl. ¶ 3. She attaches a copy of the vehicle's warranty history as Exh. A to the declaration.

included a "wear and use" evaluator.[2] The gist of the letter was that if plaintiffs accepted Ford's offer, the final amount would depend on the condition of the vehicle.

Plaintiffs first selected a replacement truck. However, they were informed by Ford that they would be required to pay nearly $10,000 in repairs (to bring their truck into a certain condition) before Ford would carry through on its obligation to replace or repurchase the truck. Id. This was confirmed in a "Reacquired Vehicle Inspection/ Condition Report" prepared by Ford's representative and agent. Plaintiffs allege that Ford's Replacement/Repurchase offer letter is "conspicuously absent of accurate information." They claim that the letter is a "form letter" which was sent out to all members of the proposed class.

Plaintiffs assert that Ford's Replacement/Repurchase letter misrepresented that a replacement vehicle is one that is of equal or greater value (the consumer having to pay the difference in a greater value) rather than the statutory requirement that the replacement vehicle be "substantially identical;" misrepresented that the consumer must pay for "vehicle upgrade" charges; and misrepresented that Ford is entitled to abnormal wear and tear on repurchased vehicles.  They also allege that Ford failed to inform consumers how any mileage offsets will be calculated, and also failed to inform them that Ford is required by the Song-Beverly Act to pay for certain damages (e.g., "incidental and consequential damages").

Plaintiffs filed the present action on February 10, 2014, alleging violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1790, et seq.; unlawful, unfair, and fraudulent business practices, in violation of Business & Professions Code § 17200; violation of the Consumer Legal Remedies Act ("CLRA"), Cal.

---

[2] The letter, which is addressed to Michael Durkee, shows that it was faxed on January 30, 2012. Ford attaches a signed copy of the letter as Exh. A to the Declaration of M. Kevin Underhill. Ford's copy shows that plaintiffs reviewed and accepted the offer and selected a replacement vehicle, and that the current mileage of the vehicle was 111795. This copy bears signatures of Michael Durkee and Leslie Durkee, both dated February 20, 2013. The report by Ford's agent states that the truck had "major body damage," and that "every part of vehicle is damaged." In addition, the truck's tailgate was completely missing.

Civ. Code § 1750, et seq.; and a claim for declaratory relief. The complaint was filed as a proposed class action, and plaintiffs assert diversity jurisdiction pursuant to CAFA.

On April 10, 2014, approximately 60 days after the complaint was filed, Ford filed the present motion for an order striking the FAC pursuant to California's anti-SLAPP statute, Cal. Civ. P. Code § 425.16.

## DISCUSSION

A.  Legal Standard

Under California law, Strategic Litigation Against Public Participation (SLAPP) suits masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so. Cal. Civ. P. Code § 425.16.

California's anti-SLAPP statute authorizes the filing of a "special motion to strike" any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution . . . in connection with a public issue." Cal. Civ. P. Code § 425.16(b)(1); Flatley v. Mauro, 39 Cal. 4th 299, 311-12 (2006). Acts in furtherance of the right of petition include "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." Id. § 425.16(e)(2). The special motion "may be filed within 60 days of the service of the complaint, or, in the court's discretion, at any later time upon terms it deems proper." Cal. Civ. P. Code § 425.16(f).

An anti-SLAPP motion is available to defendants in federal court. See Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam); see also Graham-Sult v. Clainos, __ F.3d __, 2014 WL 444153, at *4 (9th Cir. Feb. 5, 2014). The statute is to be interpreted broadly. See, e.g., Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc. ("GLAAD"), 742 F.3d 414, 421-22 (9th Cir. 2014); Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc., 682 F. Supp. 2d 1003, 1008-09 (N.D. Cal. 2010).

In determining whether an action must be stricken under the anti-SLAPP statute, the court engages in a two-step inquiry. GLAAD, 742 F.3d at 422 (citing Navellier v. Sletten,

3

1  29 Cal. 4th 82, 88 (2002)).  First, the court asks whether the defendant has made a prima
2  facie showing that the plaintiff's cause of action arises from conduct in furtherance of the
3  exercise of the defendant's constitutional right of petition or right of free speech in
4  connection with an issue of public interest.  Id.  Second, if the defendant makes this
5  showing, the burden shifts to the plaintiff to "establish, by competent evidence, a probability
6  that it will prevail on its [claims]."  Id.

7     Only a cause of action that satisfies both prongs of the anti-SLAPP statute – i.e.,
8  that arises from protected speech or petitioning and lacks even minimal merit – is a SLAPP,
9  subject to being stricken under the statute.  Navellier, 29 Cal. 4th at 89.  In evaluating the
10 motion, the court considers "the pleadings, and supporting and opposing affidavits stating
11 the facts upon which the liability or defense is based."  GLAAD, 742 F.3d at 422 (quoting
12 Cal. Civ. P. Code § 425.16(b)(2)).

13 B.   Defendant's Motion

14    Ford asserts that plaintiffs first accepted the settlement offer, but that when Ford
15 informed them they would have to pay nearly $10,000 to repair the considerable body
16 damage on the truck, they rejected the deal.  They later retained counsel and sued Ford,
17 alleging that it was required to pay them the full amount they had demanded (which did not
18 include deductions for abnormal wear and tear) regardless of how much damage there was
19 on the returned vehicle.

20    Ford seeks an order striking the complaint.  Ford makes two main arguments – that
21 plaintiffs' causes of action arise from the protected activity of engaging in settlement
22 discussions regarding threatened litigation, and that plaintiffs will be unable to show they
23 will probably prevail.

24    First, Ford contends that prelitigation settlement communications are protected
25 conduct, and that alleging that settlement negotiations were "illegal" or "fraudulent" does
26 not create an exception to anti-SLAPP coverage.

27    The anti-SLAPP statute defines four kinds of conduct that may constitute acts "in
28 furtherance of a person's right of petition or free speech" for purposes of the statute.  Cal.

United States District Court
For the Northern District of California

4

Civ. P. Code § 425.16(e).  Here, Ford asserts, its alleged conduct falls within the second category, "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. P. Code § 425.16(e)(2).

Ford acknowledges that on its face, this language might be read as limited to communications directed to an official body during its review, but argues that it is much broader than that.  Ford asserts that the communications need not be made in court or even directed to the court, that the statements need not be made to a party, and that there does not need to be an official proceeding underway at all.  See Graham-Sult, 2014 WL 444153 at *7; Tuck Beckstoffer Wines, 682 F. Supp. 2d at 1015; see also Cal. Code Civ. P. § 425.16(e).

Ford concedes that it is not clear that plaintiffs had already talked to a lawyer before approaching Ford.  Nevertheless, Ford asserts, the complaint shows that "one way or another" plaintiffs were aware of the potential "lemon law" remedies before they made their demand.  In particular, Ford notes, Michael Durkee was a potential member of a settlement class in an MDL proceeding involving the same engine about which he and his wife subsequently complained to Ford.  See In re Navistar Diesel Engine Prods. Liab. Litig., C-11-2496, MDL No. 2223 (N.D. Ill.).  After the court gave preliminary approval to the proposed settlement in November 2012, Michael Durkee opted out of the settlement.  Shortly thereafter, plaintiffs sought an individual Lemon Law repurchase remedy from Ford, and subsequently filed the present proposed class action as named plaintiffs.

Ford contends that plaintiffs' request for a replacement vehicle was not a regular business transaction, but rather was a demand for relief by an unhappy customer who was aware of specific legal remedies.  Thus, Ford argues, litigation was entirely foreseeable, and the conduct of which plaintiffs complain was in furtherance of Ford's right of petition or free speech for purposes of the statute.

Ford argues further that alleging that settlement negotiations were "illegal" or "fraudulent" does not create an exception to anti-SLAPP coverage.  Ford asserts that only

5

where the assertedly protected speech or activity was illegal as a matter of law is it considered exempt from an anti-SLAPP motion. Ford asserts that a charge of fraud during the settlement negotiations (which in Ford's view is what plaintiffs appear to be doing here) does not make any difference.

Second, Ford argues that plaintiffs will be unable to show they will probably prevail. Ford asserts that plaintiffs' claims are barred by California's litigation privilege; that plaintiffs do not adequately allege and cannot prove justifiable reliance or any duty on Ford's part to give legal advice; and that plaintiffs have not alleged standing for purposes of the UCL claim or the Song-Beverly Act claim.

The court finds that the motion must be DENIED. The acts that form the basis of plaintiffs' claims are Ford's alleged practice of demanding that consumers pay considerable sums for claimed wear and tear as a condition of completing a vehicle replacement or repurchase transaction. While it may be that Ford's written response to plaintiffs' demand letter was a protected activity, plaintiffs' causes of action do not primarily arise from Ford's written response, but rather from the alleged act or practice of requiring consumers to pay – as a condition of agreeing to replacement or repurchase – amounts that plaintiffs assert were not authorized deductions under the Song-Beverly Act.

The court "must focus on 'the substance of' the lawsuit to determine whether it arose from [a party's] protected activities." Scott v. Metabolife Int'l, Inc., 115 Cal. App. 4th 404, 413-14 (2004) (quoting City of Cotati v. Cashman, 29 Cal. 4th 69, 78 (2002)). That is, "it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." Id. at 414 (citing City of Cotati, 29 Cal. 4th at 79).

> [W]hen allegations of nonprotected activity are incidental or collateral to a plaintiff's claim challenging primarily the exercise of the rights of free speech or petition, they may be disregarded in determining whether the cause of action arises from protected activity. Conversely, if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion.

Id. at 414-15 (citing Paul v. Friedman, 95 Cal. App. 4th 853, 866 (2002)). Here, the allegations regarding protected activity (the statements made in Ford's written response to

United States District Court
For the Northern District of California

plaintiffs' claim for a replacement vehicle) are only incidental to the claims involving unprotected activity (the alleged demand for excessive payment for "wear and tear"). Accordingly, Ford has not met its burden with regard to the first step of the two-step inquiry.

Because the court finds that Ford has not made a prima facie showing that plaintiffs' claims "arise from" Ford's protected activity, there is no necessity for the court to consider whether plaintiffs have shown that they are likely to prevail on their claims.[3]

## CONCLUSION

In accordance with the foregoing, the court DENIES the motion. In addition, however, the court wishes to emphasize that its ruling that Ford's anti-SLAPP motion is not viable should not be considered the equivalent of finding that Ford cannot attempt to settle Lemon Law claims. The court takes no position with regard to whether Ford or any manufacturer can settle a Lemon Law suit for less than what the Song-Beverly Act may require.

In the court's view, the anti-SLAPP statute simply should not be construed as immunizing automobile manufacturers such as Ford from the requirements of the Song-Beverly Act simply because a consumer makes a Lemon Law claim. Taken to its logical extension, any manufacturer's response to a consumer complaint or request for repair would be construed as a protected activity, thereby immunizing that manufacturer from suit should the consumer later file a lawsuit over the product. Such a theory would, if accepted, encourage consumers to file suit without first submitting a claim for relief under the Lemon Law.

**IT IS SO ORDERED.**

Dated: August 7, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[3] Nor should any party interpret the court's ruling as reflecting a position vis-à-vis the merits of plaintiffs' claims.

7