UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DURKEE, et al.,

    Plaintiffs,

    v.

FORD MOTOR COMPANY,

    Defendant.
_____/

No. C 14-0617 PJH

**ORDER GRANTING MOTION TO DISMISS**

    Defendant's motion for an order dismissing the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim came on for hearing before this court on August 20, 2014. Plaintiffs appeared by their counsel Richard Wirtz, and defendant Ford Motor Company ("Ford") appeared by its counsel Frank Kelly and Amir Nassihi. Having read the parties' papers and carefully considered their arguments, and the relevant legal authority, the court hereby GRANTS the motion as follows.

## BACKGROUND

    Plaintiffs Michael Durkee and Leslie Durkee allege that they experienced "consistent and substantial problems" with a 2005 Ford F-250 truck that Michael purchased for more than $60,000 from Ford of Marin. In 2012, they contacted Ford and demanded that it repair or replace the truck under the "Lemon Law" provisions of the Song-Beverly Consumer Warranty Act.

    After reviewing the matter, Ford sent a letter offering either a replacement or a refund. The letter also stated that plaintiffs would be responsible for "missing equipment,

abnormal wear or damages evident on [the] vehicle (i.e., worn tires, missing radio, cracked windshield)" and that "[a]ny missing equipment, abnormal wear, or damage must be corrected prior to completing of the reacquired vehicle transaction."

Plaintiffs selected the "Replacement Transaction" option, and indicated that the current mileage of the truck was 111795.  However, after inspecting the vehicle and determining it had suffered "major body damage," Ford informed plaintiffs that they would be responsible for paying more than $10,000 for repairs before Ford would complete the transaction.

On February 10, 2014, plaintiffs filed the present complaint as a proposed class action, asserting causes of action under the Song-Beverly Act, California Civil Code § 1790, et seq.; the Unfair Competition Law (UCL), California Business & Professions Code § 17200; and the Consumer Legal Remedies Act (CLRA), California Civil Code § 1770, et seq.  Ford now seeks an order dismissing the complaint for failure to state a claim.

**DISCUSSION**

A.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The court is to "accept all factual allegations in the complaint as true and construe

2

the pleadings in the light most favorable to the nonmoving party." <u>Outdoor Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899-900 (9th Cir. 2007).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009); <u>see also</u> <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008) (district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

      A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face.  <u>See</u> <u>id.</u> at 558-59.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" <u>Id.</u> at 679.  In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  <u>See</u> <u>Sparling v. Daou</u>, 411 F.3d 1006, 1013 (9th Cir. 2005).

      Although the court generally may not consider material outside the pleadings when resolving a motion to dismiss for failure to state a claim, the court may consider matters that are properly the subject of judicial notice. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001); <u>Mack v. South Bay Beer Distributors, Inc</u>., 798 F.2d 1279, 1282 (9th Cir. 1986).  Additionally, the court may consider exhibits attached to the complaint, <u>see</u> <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims.  <u>See</u> <u>No. 84 Employer–Teamster Joint Counsel Pension Trust Fund v. America West Holding Corp.</u>, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

      Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

3

shall be stated with particularity." Fed. R. Civ. P. 9(b).  Under Rule 9(b), falsity must be pled with specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).  "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotations omitted).  In addition, the plaintiff must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made. Yourish v. California Amplifier, 191 F.3d 983, 992–93 (9th Cir. 1999).

B.  Defendant's Motion

Ford asserts that the claims for equitable relief (UCL and CLRA claims) must be dismissed because plaintiffs have an adequate remedy at law; that the CLRA claim must be dismissed for the further reason that a transaction involving repurchase/replacement of a vehicle pursuant to a claim under the Song-Beverly Act does not fall under the CLRA; that the claims are barred by the litigation privilege; that the complaint fails to state a claim because it sounds in fraud but the claims are not pled with particularity as required by Rule 9(b); and that each of the causes of action fails to plead facts sufficient to state a claim.

1.  Whether the UCL and CLRA claims should be dismissed.

Ford argues, first, that the UCL and the CLRA causes of action should be dismissed because those claims seek equitable relief, and plaintiff has an adequate remedy at law, under the Song-Beverly Act.  The motion is GRANTED.

Apart from civil penalties, which are not at issue here, the UCL provides only equitable remedies.  See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003); Madrid v. Perot Systems Corp., 130 Cal. App. 4th 440, 452 (2005).  A plaintiff seeking equitable relief must establish that there is no adequate remedy at law available. See Knox v. Phoenix Leasing, Inc., 29 Cal. App. 4th 1357, 1368 (1994).  Thus, statutory

4

relief under the UCL "is subject to fundamental equitable principles, including inadequacy of the legal remedy." Prudential Home Mortg. Co. v. Superior Court, 66 Cal. App. 4th 1236, 1249 (1998).

Because the UCL provides for only equitable remedies, and plaintiffs have an adequate remedy at law for the alleged Song-Beverly Act violation, plaintiff's UCL claim must be dismissed. See Rynes v. Striker, 2011 WL 2149095 at *3 (N.D. Cal. May 31, 2011).

Ford also seeks to dismiss the injunctive relief portion of the CLRA claim, on the same basis. The CLRA provides for damages, as a legal remedy intended to compensate those who suffer actual damage. Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th 746, 754 (2003). However, in the present action, plaintiffs do not seek damages in the CLRA claim. Rather, they seek only injunctive relief, plus attorney's fees and costs. Since plaintiffs are not seeking damages, but only injunctive relief to which they are not entitled because they have an adequate remedy at law, the CLRA claim is also dismissed on that basis.

As a further basis for dismissing the CLRA claim, Ford asserts that plaintiffs fail to state a claim under the CLRA because none of the alleged conduct was undertaken as part of a sales "transaction" with a consumer. The CLRA proscribes 25 "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770(a). Ford argues that a vehicle repurchase or replacement transaction is not a "transaction" that was "intended to result," or which did "result[ ] in the sale or lease of goods or services" to a consumer, and thus is not covered by the CLRA. Plaintiffs do not respond to this argument in their opposition.

The motion is GRANTED. The transaction involving the repurchase/replacement of plaintiffs' truck does not fall under the CLRA, as it was not intended to result, and did not result, in the sale or lease of goods or services to a consumer. Moreover, a CLRA claim cannot be based on events following a sales transaction. See Daugherty v. American

5

Honda Motor Co., Inc., 144 Cal. App. 4th 824, 837 n.6 (2006) (no CLRA claim stated when alleged misrepresentations occurred after sale of allegedly defective vehicle); see also, Harlan v. Roadtrek Motorhomes, Inc., 2009 WL 928309 at *17 (S.C. Cal. Apr. 2, 2009).

        2.        Whether the Song-Beverly Act claim is barred by the litigation privilege

Ford argues that the complaint must be dismissed because plaintiffs' claims are based on the protected activity of engaging in settlement discussions regarding threatened litigation. "A privileged publication is one made . . . [i]n any judicial proceeding . . . ." Cal. Civ. Code § 47(b). This provision applies not only to language used inside a courtroom, but also to statements made outside a courtroom and/or prior to anticipated litigation. See Home Ins. Co. v. Zurich Ins. Co., 96 Cal. App. 4th 17, 23 (2002). In particular, it applies to statements made during efforts to settle a dispute. See Malin v. Singer, 217 Cal. App. 4th 1283, 1299-1300 (2013).

Here, Ford asserts, it made a settlement offer which plaintiffs claim was illegally low, and which they also allege concealed information about the operation and legal effect of the Song-Beverly Act. Ford contends that even if plaintiffs' allegations were true, the claims would still be barred by the litigation privilege, because Ford's statements were made in connection with litigation.

The court finds that the litigation privilege does not bar any claims related to Ford's offer to replace plaintiffs' vehicle, or to refund the purchase price. Plaintiffs believed that under the Song-Beverly Act, they were entitled to a buy-back of the truck; and they did in fact contact Ford to request such a buy-back. It appears from the allegations in the complaint that at the time Ford sent the letter, both sides agreed that either a buy-back or a replacement of the vehicle was appropriate – or at least, Ford did not seem to have rejected the concept. A pre-litigation communication is privileged only so long as it "relates to litigation that is contemplated in good faith and under serious consideration." See Action Apartment Assn, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1251 (2007). There are no allegations in the complaint showing that plaintiffs anticipated litigation at the point they contacted Ford, regardless of what Ford's intention was.

3.     Whether the complaint states a claim for violation of the Song-Beverly Act

Ford argues that the Song-Beverly Act cause of action should be dismissed for failure to state a claim, and for failure to plead fraud with particularity. Ford makes three main arguments – that plaintiffs have not alleged facts sufficient to support the elements of a claim under the Song-Beverly Act, but have instead alleged only conclusory statements; that to the extent that plaintiffs are claiming that Ford's offer to replace the truck consisted of or included fraudulent misrepresentations or omissions, they have not pled with particularity as required by Rule 9(b), and have not alleged facts showing that they actually relied on such misrepresentations or omissions; and that plaintiffs' claim fails because it is based on an incorrect interpretation of the Song-Beverly Act.

First, Ford argues that plaintiffs have not alleged facts sufficient to support the elements of a claim under the Song-Beverly Act. To state a claim under the Song-Beverly Act, the plaintiff must allege (1) that the vehicle had a defect that was covered by an express warranty that substantially impaired its use, value or safety, (2) that plaintiff delivered the vehicle to defendant or its authorized repair facility for repair, (3) that defendant or its authorized repair facility failed to repair the vehicle to match the express warranty after a reasonable number of opportunities to do so, and (4) that defendant did not promptly replace or buy back the vehicle. See CACI 3201; Cal. Civ. Code § 1793(d)).

In the complaint, plaintiffs allege that they sought a repurchase or replacement "[a]fter consistent and substantial problems" with the truck, Cplt ¶ 11; that the truck was "delivered with serious defects and non-conformities [sic] to warranty and developed other serious defects and nonconformities to warranty[,] and that "[t]he defects and nonconformities manifested themselves within the applicable express warranty period [and] substantially impair the use, value and/or safety of the vehicle[ ];" Cplt ¶¶ 37-38; that plaintiffs "delivered the vehicle to Ford" to repair the nonconformities, Cplt ¶ 43; and that "a reasonable number of [repair] attempts" were made without success, Cplt ¶ 45.

However, Ford notes that plaintiffs do not say what the problems were, and do not plead any facts showing that the problems were "consistent" or "substantial." Nor, Ford

7

asserts, have plaintiffs described the alleged nonconformities, or described the warranty period, or alleged how many repair attempts were made without success (or when), or stated what happened when they did take the truck in for repairs.

In opposition, plaintiffs contend that they have pled all of the elements necessary to state a claim under the Song-Beverly Act – (a) that the vehicle had a nonconformity covered by the express warranty, which substantially impaired the use, value, or safety of the vehicle; (b) that the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair; and (c) that the manufacturer or representative did not repair the nonconformity after a reasonable number of repair attempts.  See Cal. Civ. Code § 1793.2; Ibrahim v. Ford Motor Co., 214 Cal. App. 3d 878, 886-87 (1989).

Further, at the hearing, plaintiffs' counsel cited to ¶ 13 of the complaint, where plaintiffs allege that Ford "knows or should have known" that it violated the Song-Beverly Act when it

> (1) refused to provide "substantially identical" vehicles to those persons who opted for a "replacement", (2) construed the term "substantially identical" so narrowly and restrictively so as to nullify the ability of an individual to obtain a replacement vehicle, (3) re-defined the term "substantially identical" to be an exactly identical Manufacturer's Suggest Retail Price ("MSRP") to the defective vehicle rather than an actual substantially identical vehicle, (4) placed surcharges, taxes, upgrade fees and other charges on the replacement vehicles, (5) took improper mileage deductions for both replacement and repurchase transactions, (6) took deductions for what it terms "abnormal wear and tear" for both replacement and repurchase transactions, (7) required consumers to perform repairs in order to consummate a replacement or repurchase transaction, (10) [sic] refused to compensate consumers in both replacement and repurchase transactions for incidental and consequential damages including registration costs, towing, rental car costs, insurance, and all costs associated with the inspection, receipt, transportation and care and custody of the vehicles being replaced or repurchased and any costs associated with cover.

Cplt ¶ 13.

Plaintiffs assert that in addition to pleading facts that support the required elements, they have pled that, in lieu of complying with its duties under the Song-Beverly Act, Ford demanded that plaintiffs make more than $10,000 worth of repairs to the vehicle, and also attempted to charge for improper deductions and utilized an improper calculation of plaintiffs' "use" of the vehicle.  Plaintiffs argue that these additional facts show willfulness –

that Ford's failure to replace or refund was not the result of a good-faith belief that the Act did not apply.

The court finds, however, that plaintiffs have not pled facts sufficient to state a claim under the Song-Beverly Act. While it may be true that they have pled the necessary elements, the allegations are conclusory and merely repeat the language of the statute. The complaint alleges that plaintiffs sought replacement or repurchase after unidentified "consistent and substantial problems," but it is devoid of the necessary facts to support an underlying Song-Beverly Act claim, and even fails to identify the alleged nonconformity. Nor have plaintiffs alleged any facts showing when the warranty period commenced or how long it extended, or when they presented the truck to Ford for repairs, and with what result. For purposes of a Rule 12(b)(6) motion, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d at 1055.[1]

Second, Ford contends that Ford argues that the complaint sounds in fraud, but that plaintiffs have failed to plead fraud with particularity as required by Rule 9(b). The elements of fraud, which give rise to an action for deceit under California law, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (scienter); (c) intent to defraud (intent to induce reliance); (d) justifiable reliance; and (e) resulting damage. Lazar v. Superior Court (1996) 12 Cal.4th 631, 638 (1996); see also Wilhelm v. Pray, Price, Williams & Russell, 186 Cal. App. 3d 1324, 1331 (1986).

The complaint occasionally refers to affirmative "representations," but no details are provided, except to the extent that plaintiffs are referring to the statements in the offer letter – that is, statements relating to what Ford was legally required to do in response to plaintiffs' claim for repair or replacement. However, plaintiffs fail to explain how anything in

---

[1] In addition, Ford argues, plaintiffs cannot prevail on this claim because it is time-barred. Ford claims that Leslie Durkee's declaration submitted in opposition to Ford's special motion to strike (which the court denied in an order issued on August 7, 2014) shows that the four-year statute of limitations on the Song-Beverly Act claim ran, at the latest, on October 19, 2013; and this action was not filed until February 14, 2014. Because this reference is to an argument in another motion, the issue is not presently before the court.

9

the letter (which does not mention the Song-Beverly Act) is false.  Moreover, plaintiffs do not allege that they actually relied on anything in the letter, to their detriment, and do not allege any facts showing that any reliance on representations made by an opposing party was justifiable.

In opposition, plaintiffs assert that they are not suing for fraud, and thus, the heightened pleading standard of Rule 9(b) does not apply to any cause of action alleged in the complaint.  It is true that plaintiffs do not specifically allege any fraudulent conduct in the Song-Beverly Act cause of action.  They assert only that Ford "determined and acknowledged" that plaintiffs' vehicle was a "lemon" under the Song-Beverly Act standards, and that it nonetheless "failed to promptly offer a repurchase or replacement of [the] vehicle in accordance with the requirements of the [Act]."  Cplt ¶ 46.  They assert further that they are entitled to "all damages set forth in Song-Beverly including reimbursement of all down payments, [and] payments" and that "Ford was entitled to take a deduction only for that amount directly attributable to [p]laintiffs' use of the subject vehicle prior to the manifestation of the nonconformities."  Cplt ¶¶ 47-48.

Nevertheless, in the "Summary and Operative Facts" section of the complaint, which is incorporated by reference into each cause of action, plaintiffs allege that Ford's Replacement/Repurchase letter "misrepresents (1) that a replacement vehicle is one that is of equal or greater value (the consumer having to pay the difference in a greater value) rather than the statutory requirement that a replacement vehicle be 'substantial [sic] identical'" and that "(2) [the] consumer must pay for 'vehicle upgrade' charges[;]" that Ford "does not inform consumers (3) how any mileage offset will be calculated and (4) of the fact that Ford is required by law to pay certain damages (pursuant to the Song-Beverly Act); e.g. incidental and consequential damages[;]" and that Ford "also states, as if it were a matter of law, that it is entitled to abnormal wear and tear on repurchased vehicles.  In fact, the law specifically provides for no such deductions."  Cplt ¶ 12.

In addition, in the CLRA cause of action, plaintiffs allege that Ford "made material misrepresentations and omitted material facts in its transactions with [p]laintiffs and class

members regarding the replacement and/or restitution of vehicles under the Song-Beverly Act" and that Ford "knew that consumers would rely on its misrepresentations and omissions, including [p]laintiff and other class members . . . ." Cplt ¶¶ 66-67.

According to plaintiffs, those "misrepresentations" included "misrepresenting the nature and characteristics of replacement vehicles that Ford is required to provide under Song-Beverly;" placing "surcharges, taxes, upgrade fees and other charges on the replacement vehicles;" taking "improper mileage deductions for both replacement and repurchase transactions;" taking "deductions for what it terms 'abnormal wear and tear' for both replacement and repurchase transactions;" and requiring consumers "to perform repairs in order to consummate a replacement or repurchase transaction." Cplt ¶ 69.

At the hearing, in response to the court's questions regarding the allegations in the CLRA cause of action regarding misrepresentations, plaintiff's counsel stated that the false statements or misrepresentations were contained in Ford's letter to plaintiffs, and related to statements concerning the law. Although it is not entirely clear, it appears that plaintiffs' position is that Ford misrepresented facts regarding the requirements of the Song-Beverly Act, and deceived customers into believing a false statement of the applicable law.

Finally, in the UCL cause of action, plaintiffs allege that Ford committed unlawful, unfair, and fraudulent business acts and practices, in both the violation of the Song-Beverly Act and the CLRA. Cplt ¶ 55. Plaintiffs assert that "Ford's acts and business practices are likely to and do deceive consumers as to their legal rights and Ford's obligations under Song-Beverly, and is [sic] likely to preclude consumers from exercising their legal rights[;]" and further, that "Ford's acts and practices involved material misrepresentations and omissions from which it may be presumed and inferred that class members relied on such misrepresentations and omissions." Cplt ¶¶ 57-58.

When a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097,

11

1103-04 (9th Cir. 2003). In addition, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Id. at 1103.

Here, even though the Song-Beverly Act cause of action, taken alone, may not clearly allege fraudulent conduct, the remainder of the complaint is plainly grounded in fraud, but does not plead fraud with particularity. The court has dismissed the UCL and CLRA causes of action, but in amending the complaint, plaintiffs must choose between deleting all references to misrepresentations or fraudulent omissions, or pleading the alleged misrepresentations/omissions with particularity, as required by Rule 9(b). To the extent that plaintiffs allege fraud by omission, they must plead facts showing that Ford had a duty to disclose what plaintiffs claim was withheld.

In general, misrepresentations of the law are not actionable as fraud, because statements of the law are considered opinions and may not be relied upon, see Sosa v. DirecTV, Inc., 437 F.3d 923, 940 (9th Cir. 2006), absent special circumstances showing that there was some duty to disclose, see LiMandri v. Judkins, 52 Cal. App. 326, 336-37 (1997). Thus, to the extent that plaintiffs allege fraud based on misrepresentations of the law, they must also plead facts showing "special circumstances" that would warrant imposing a duty to disclose on Ford.

Third, Ford argues that plaintiffs' claim fails because it is based on an incorrect interpretation of the Song-Beverly Act. Ford contends that plaintiffs seem to assume that Ford was required to accept their "Lemon" claim at face value, and that the claim itself was enough to establish an obligation on Ford's part. Ford asserts, however, that a consumer is not entitled to anything under the Song-Beverly Act unless the legal requirements are met.

To the extent the Song-Beverly Act cause of action is premised on the allegation that Ford's "settlement offer" violated the Act, Ford asserts that its conduct would have complied with the statute even if the vehicle had been adjudicated to have been a lemon. Plaintiffs' position is that it was unlawful for Ford to condition its offer to repurchase or replace plaintiffs' truck on their repair of or payment for damage to their vehicle, but Ford

argues that the Song-Beverly Act does not prohibit such a practice.

Rather, Ford asserts, common law principles of law and equity apply to claims under the Song-Beverly Act, including rules regulating the equitable right to offset.  Ford argues that if this principle were not applied, a consumer could return significantly damaged or vandalized vehicles and obtain disproportionate recoveries – as plaintiffs have attempted to do here.  Ford contends that in alleging that the Song-Beverly Act precludes any requirement that the consumer pay a setoff for damage for which the consumer is justly responsible, plaintiffs have misinterpreted the Act.

Here, Ford contends, plaintiffs' truck was so heavily damaged that it needed an "entire new body."  A portion of the vehicle's structure – the tailgate – was missing, and essentially every part of the vehicle was damaged.  Ford argues that under Ibrahim v. Ford Motor Co., 214 Cal. App. 3d 878, 898 (1989) and 16 C.C.R. § 3398.11(c), buyers must be held responsible for excessive vehicle damage entirely unrelated to the alleged nonconformity.  Ford contends that if it were not entitled to ask plaintiffs to repair such a vehicle themselves or pay for the damage (which Ford estimated at over $10,000), it would be unfairly forced to bear significant costs for damage it did not cause that was wholly unrelated to any defect for which the plaintiffs may have sought repair under the warranty.

In opposition, plaintiffs argue that their complaint is not based on an incorrect reading of the Song-Beverly Act, as the statute does not define what cannot be deducted, but rather only what can be deducted.  Specifically, they assert, the Act provides how a repurchase amount should be calculated when a vehicle is being repurchased as a lemon; and that generally speaking, provides that a repurchase amount should be calculated as what was paid or is payable on the vehicle minus a mileage offset.  They contend that because the statute does not provide an offset for reasonable wear and tear, any such deduction is improper.  They argue that the purpose of the statute is to protect consumers, and that it is plaintiffs' interpretation that should be favored, not Ford's.

Because the Song-Beverly Act claim is so deficiently pled, the court takes no position on whether plaintiffs' claim is based on an incorrect interpretation of the Act.  The

court notes, however, that the list of eight "acts" that plaintiffs claim violated the Song-Beverly Act, see Cplt ¶ 13, can be divided into three general categories – that Ford failed to buy back plaintiffs' truck at the full price, that Ford unlawfully required plaintiffs to pay a sum in excess of $10,000 for repairs to the truck before the buy-back transaction could be consummated, and that Ford took other improper deductions from the amount it agreed to pay for the repurchase.  In the complaint, plaintiffs have failed to allege facts showing they were injured by any of these acts.  It appears clear from even the sketchy allegations in the complaint that plaintiffs did not in fact pay $10,000 for repairs, and that Ford did not in fact make any deductions.  As for the alleged failure to buy back the truck, there is no allegation that Ford was legally obligated to repurchase the truck, and failed to do so.

The motion to dismiss the Song-Beverly Act is GRANTED.  The dismissal is with leave to amend.  In amending this cause of action, plaintiffs must provide supporting facts sufficient to state a claim that is plausible on its face, as required by Rule 8(a), in accordance with Iqbal/Twombly.  If plaintiffs allege any misrepresentations or fraudulent omissions in connection with this claim, the claim must be pled with particularity as required by Rule 9(b).

## CONCLUSION

In accordance with the foregoing, Ford's motion to dismiss is GRANTED.  Because the court finds that no amendment can cure the deficiencies in the UCL and CLRA claims, those causes of action are dismissed WITH PREJUDICE.  The Song-Beverly Act cause of action is dismissed WITH LEAVE TO AMEND.  Any amended complaint must be filed no later than September 30, 2014.  No new parties or claims may be added without stipulation of the parties or leave of court.

**IT IS SO ORDERED.**

Dated: September 2, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge