United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DURKEE, et al.,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant.
_______________________________/

No. C 14-0617 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendant's motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim came on for hearing before this court on December 10, 2014. Plaintiffs appeared by their counsel Richard Wirtz, and defendant appeared by its counsel Frank Kelly, Amir Nassihi, and Kevin Underhill. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

## BACKGROUND

Plaintiffs Michael Durkee and Leslie Durkee allege that Michael Durkee purchased a 2005 Ford F-250 truck from Ford of Marin on July 28, 2005, for $61,707.20. The original owner of the truck had purchased it on September 17, 2004. The five-year express warranty began to run as of that date.

In late 2012 or early 2013, well after the five-year warranty had expired, plaintiffs contacted defendant Ford Motor Corp. ("Ford") with a demand that Ford repair or replace the truck under the "Lemon Law" provisions of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq. ("Song-Beverly Act"). Ford responded with a letter offering either a replacement or a refund. The letter also stated that plaintiffs would be responsible for "missing equipment, abnormal wear or damages evident on [the] vehicle (i.e., worn

tires, missing radio, cracked windshield)" and that "[a]ny missing equipment, abnormal wear, or damage must be corrected prior to completing of the reacquired vehicle transaction."

Plaintiffs selected the "Replacement Transaction" option, and indicated that the mileage of the truck was 111,795. At that point the truck was over eight years old and had sustained serious body damage. After inspecting the vehicle in March 2013, Ford informed plaintiffs that they would be responsible for paying more than $10,000 for repairs before Ford would complete the transaction.

On February 10, 2014, plaintiffs filed the original complaint in the present action as a proposed class action, asserting causes of action under the Song-Beverly Act; the Unfair Competition Law ("UCL"), California Business & Professions Code § 17200; and the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1770, et seq.; plus a claim for declaratory relief, seeking a determination of their rights and obligations, and Ford's responsibilities and liabilities under the Song-Beverly Act.

Attached to the complaint were two exhibits – a copy of the letter from Ford to Michael Durkee, bearing a fax date of January 30, 2012, offering a replacement or a refund, and stating that he would be responsible for "any missing equipment, abnormal wear or damages evident on [the] vehicle . . . ;" and a copy of the "Reacquired Vehicle Inspection/Condition Report" completed by the Ford dealer, dated March 14, 2013; showing 112,699 miles; stating that the truck had "more than $10,000 in damages" and "needs entire new body;" indicating that "every part of vehicle is damaged" and the spare and RR tire were bald; and noting "major body damage," "major dents," and "deep scratches," and that the tailgate was missing.

The gist of the complaint was that Ford violated the Song-Beverly Act by failing to provide plaintiffs with a "substantially identical" replacement vehicle, and by demanding that plaintiffs pay over $10,000 in repairs before it would replace the truck, and that Ford fraudulently represented that it was entitled to impose that condition before it was required to replace the truck.

Ford moved to dismiss the complaint for failure to state a claim. In an order issued September 2, 2014, the court granted the motion, and dismissed the UCL and CLRA claims without leave to amend. In addition, the court held that the complaint failed to state a claim for violation of the Song-Beverly Act because plaintiffs had failed to plead fraud with particularity (to the extent they were alleging fraud) and had failed to allege facts supporting the elements of the claim. Because the Song-Beverly Act claim was so deficiently pled, the court did not address Ford's argument that plaintiffs' claim was based on an incorrect interpretation of the Act. The court granted leave to amend as to the Song-Beverly Act claim.

Plaintiffs filed the first amended complaint ("FAC") on September 30, 2014. The FAC is identical to the original with four exceptions. First, the allegations in the Song-Beverly Act cause of action are the same except that "Plaintiff" has been changed to the plural.[1] See FAC ¶¶ 35-55. Second, plaintiffs have deleted references to the UCL and CLRA, based on the dismissal of those causes of action. Third, plaintiffs have replaced the former ¶ 11 with six new or amended paragraphs. See FAC ¶¶ 11-16. Most of these relate to the truck's repair history between 2004 and 2012, including six "engine-related repairs" between 2005 and 2009. See FAC ¶¶ 11-14. Fourth, there is an additional exhibit attached to the FAC – a copy of a document entitled "Warranty History," which plaintiffs claim to have received from Ford on January 21, 2013.

It is this "Warranty History" that provides the basis for the allegations relating to the truck's repair history in FAC ¶¶ 12-14. The Warranty History shows that prior to Michael Durkee's purchase of the truck on July 28, 2005, the first owner presented it to the dealer on July 5, 2005, for repair of an engine oil leak. FAC ¶ 12.

On September 23, 2005, approximately two months after they purchased the truck, plaintiffs present the truck for repair of an "apparent overheating problem." FAC ¶ 13(a).

---

[1] The original complaint listed only Michael Durkee on the caption, but referred throughout to "plaintiffs" and also mentioned Leslie Durkee. It appears that both Michael and Leslie Durkee requested the replacement from Ford.

The overheating was located in or on the battery. The battery cable, battery, and starter (which was defective) were replaced. FAC Exh. 1, at 1. The Warranty History reflects nothing other than routine maintenance for the next two-and-a-half years.

On March 29, 2007, plaintiffs took the truck in for repairs because of an apparent leak of power-steering fluid. FAC ¶ 13(b). The leak appeared to come from behind the master cylinder. The booster was replaced and the reservoir refilled. FAC Exh. 1, at 2. The Warranty History reflects nothing other than routine maintenance for the following 13 months.

On May 19, 2008, “[t]he engine overheated and was smoking, lacked power, and had to be towed in,” a problem plaintiffs allege was “related to the engine’s EGR [exhaust gas recirculation] valve.” FAC ¶ 13(c). The problem was determined to be "EGR related." FAC Exh. 1, at 2.

On May 30, 2008, plaintiffs experienced a second engine problem that they also allege was related to the EGR valve. FAC ¶ 13(d). This occurred eleven days after the May 19, 2008 "EGR related" problem. The notations on the Warranty History state, "Found EGR valve to be defective[.] Replaced EGR valve . . . performed EGR test again, all OK." FAC Exh. 1, at 2-3. Plaintiffs reported no further problems for next nine months.

On February 27, 2009, the truck "had to be towed in with no power, was running rough, the RPMs had dropped and the vehicle had died.” FAC ¶ 13(e). The Warranty History notes that the fuel pump was replaced. FAC Exh. 1, at 3.

On September 17, 2009, the five-year express warranty period expired. FAC ¶ 11.

On October 19, 2009, plaintiffs reported that "the vehicle was emitting white smoke and had to be towed in” for repair. FAC ¶ 13(f). The Warranty History indicates, "EGR cooler leaking, vehicle hydrolocked." FAC Exh. 1, at 3. Various tests were conducted, and it appears from the Warranty History that the EGR cooler was replaced. Id.

On September 28, 2011, the Warranty History reports that a right front wheel sensor was installed. FAC Exh. 1, at 3.

Plaintiffs assert that in "Fall 2012," they “again experience[] the same engine related

United States District Court
For the Northern District of California

problems for the first time." FAC ¶ 14. Plaintiffs allege breach of both the express warranty and the implied warranties of merchantability and fitness for a particular purpose. FAC ¶¶ 41-50. They also assert that under the Song-Beverly Act, they were entitled to a repurchase or replacement of the truck, and that Ford was entitled to take a deduction only for that amount directly attributable to plaintiffs' use of the truck prior to "the manifestation of the nonconformities." FAC ¶¶ 51, 53.

Ford now seeks an order dismissing the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

**DISCUSSION**

A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). A motion to dismiss should be granted if the complaint does not

United States District Court
For the Northern District of California

proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Although the court generally may not consider material outside the pleadings when resolving a motion to dismiss for failure to state a claim, the court may consider matters that are properly the subject of judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims. See No. 84 Employer-Teamster Jt. Counsel Pension Tr. Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), falsity must be pled with specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted). "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (citation and quotation omitted). In addition, the plaintiff must do more than simply allege the neutral facts necessary to identify the transaction; he

must also explain why the disputed statement was untrue or misleading at the time it was made. Yourish v. California Amplifier, 191 F.3d 983, 992–93 (9th Cir. 1999).

B. Defendant's Motion

Ford argues that the FAC fails to state a claim for breach of the implied warranty of fitness for a particular purpose and for breach of the implied warranty of merchantability; that all plaintiffs' warranty claims are time-barred; and that plaintiffs' allegations that Ford violated the Song-Beverly Act by deducting for unreasonable wear and tear, and that it misrepresented the Act's remedies, are baseless (and that the claim for declaratory relief fails for the same reasons). The court finds that plaintiffs' claims are time-barred, and thus finds it unnecessary to address Ford's remaining arguments.

The Song-Beverly Act does not include an express limitation period for filing civil actions. For this reason, courts have applied the Uniform Commercial Code's four-year statute of limitations for breach of warranty. See Krieger v. Nick Alexander Imports, Inc., 234 Cal. App. 3d 205, 213, 215 (1991); Cal. Com. Code § 2725(1).

Under the Song-Beverly Act, the duration of an implied warranty of merchantability is coextensive with an express warranty, "but in no case is shorter than sixty days or longer than one year following the sale of the goods." Cal. Civ. Code § 1791.1(c); see Tietsworth v. Sears, Roebuck and Co., 2009 WL 1363548 at *3 (N.D. Cal. May 14, 2009). A cause of action for breach of warranty accrues

> when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Cal. Com. Code § 2725(2).

Here, the truck was originally purchased on September 17, 2004, and the implied warranty expired at the latest on September 17, 2005. The "future performance" exception of Commercial Code § 2725(2) applies only when “the seller has expressly agreed to warrant its product for a specific and defined period of time.” Cardinal Health 301, Inc. v. Tyco Electronics Corp., 169 Cal. App. 4th 116, 130 (2008). An implied warranty is not a

United States District Court
For the Northern District of California

warranty that explicitly extends to the future performance of goods. Id. at 131. Because plaintiffs did not file suit until February 2014, the Song-Beverly implied warranty claims must be dismissed as time-barred. See MacDonald v. Ford Motor Co., __ F. Supp. 2d __, 2014 WL 1340339 at *10-11 (N.D. Cal. March 13, 2014).[2]

By its terms, the express warranty covered plaintiffs' truck for five years or 100,000 miles, whichever came first. FAC ¶ 11. This warranty period commenced with the initial sale on September 17, 2004. Thus, the five-year warranty period expired on September 17, 2009.

The first time plaintiffs took the truck in for repairs after the expiration of the express warranty was October 19, 2009. Thus, Ford argues, that is the date the breach of express warranty claim accrued, because that is the date that plaintiffs "discovered" the problem. For their part, plaintiffs assert that it was not until approximately three years later – in "Fall 2012" – when they claim they "again experienced the same engine related problems for the first time," and allegedly discovered that Ford's previous repairs to the engine during the express warranty period had failed to correct the problem. See FAC ¶ 14. For this reason, plaintiffs allege that the limitations period for their claims against Ford was tolled under the delayed discovery rule until the Fall of 2012.

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2007) (citation and quotation omitted). Courts have developed several equitable exceptions to the usual rules governing limitations periods. "The most important of these

---

[2] Under certain circumstances, a Song-Beverly claim may proceed where a product defect arises after the one-year implied warranty has expired, as the implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale. See Britallia Ventures v. Stuke Nursery Co., Inc., 153 Cal. App. 4th 17, 24 (2007); Moore v. Hubbard & Johnson Lumber Co., 149 Cal. App. 2d 236, 240-41 (1957). Here, however, plaintiffs assert that the truck was not merchantable because the number of repairs required over the years show it was not "safe and reliable." Thus, if (as plaintiffs claim) the number of repairs shows that the truck was not merchantable, the applicable statute of limitations had necessarily run long before February 10, 2010 (four years prior to the date plaintiffs filed the complaint).

United States District Court
For the Northern District of California

doctrines, the discovery rule, where applicable, postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1192 (2013) (citations and quotations omitted).

> A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements. Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period.

Fox, 35 Cal. 3d at 807 (citations and quotations omitted); see also Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1111 (1988). The discovery rule requires a plaintiff to inquire into the existence of a cause of action when he/she has access to information that would prompt a reasonable party to do so. See Fox, 35 Cal. 4th at 807-08

Thus, the discovery rule delays accrual only until the plaintiff has, or should have, inquiry notice of the cause of action. Fox, 35 Cal. 3d at 807. In order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff must specifically plead facts showing the time and manner of discovery and the inability to have made earlier discovery despite reasonable diligence. McKelvey v. Boeing North American, Inc., 74 Cal. App.4th 151, 160 (1999); see also Fox, 35 Cal. 4th at 808. While resolution of the statute of limitations issue is normally a question of fact, whenever reasonable minds can draw only one conclusion from the facts presented, the question becomes one of law. See, e.g., E-Fab, Inc. v. Accountants,, Inc. Servs., 153 Cal. App. 4th 1308, 1320 (2007).

Here, plaintiffs certainly had reason at least to suspect a breach of warranty well before the end of the warranty period. While plaintiffs claim that they experienced "the same engine-related problems" in the Fall of 2012, and that this was the first time they discovered the alleged breach of the express warranty, which had expired in September 2009, this assertion is belied by plaintiffs' prior contention in opposition to Ford's anti-SLAPP motion to strike that as of October 19, 2009, they had made a "reasonable number of attempts" to have the truck's "severe engine problems" repaired.

In their June 11, 2014 opposition to Ford's motion to strike, plaintiffs argued that "there can be no doubt that a car that suffers from severe engine problems, such that it

persistently loses complete power, overheats, and smokes (requiring a tow-in) does not conform to Ford's express warranty." Pltf's Opp. to Motion to Strike, Doc. 19 at 9. They asserted that they were likely to prevail on their Song-Beverly Act claim because they "presented the vehicle to Ford with severe engine problems at least four times," citing the May 19, 2008 incident when the engine overheated and the truck was towed in; the May 30, 2008 incident when the EGR valve was found to be defective; the February 27, 2009 incident when the truck was "doing the same thing as before," and was towed in with no power, running rough; and the October 19, 2009 incident when the engine was emitting white smoke, the truck was towed in, and the EGR cooler was leaking. Id. at 10.

Plaintiffs asserted that four failed repair attempts for the same engine problems is a "reasonable number of attempts" for purposes of establishing a claim of breach of express warranty under the Song-Beverly Act. Id. Plaintiffs cannot now take the position that they were not on inquiry notice of the alleged breach of express warranty, particularly after they took the truck in again for a post-warranty engine repair in October 2009.

Subsequently, at the oral argument on Ford's motion to dismiss the original complaint, the court asked plaintiffs' counsel, "So if you have got a car that you believe comes within the Lemon Law, you can drive it. And if [the manufacturer and dealer] don't ask to take it back, you can drive it until it falls apart, and then you get a whole new vehicle?" Counsel responded, "Yes, your Honor." Counsel then stated that Ford had a duty to repurchase plaintiffs' truck – whether or not plaintiffs asked it to – "after the first or second repair that fell within the same category of repair, the same engine repair." Aug. 30, 2014 Tr. at 24-25. However, a "first or second repair" would also put a reasonable person on inquiry notice that there had been a breach, and according to plaintiffs' allegations that would have happened by May 2008, or at the very latest, by October 19, 2009.

Plaintiffs have not alleged any facts showing how they were prevented from discovering the alleged breach prior to Fall 2012 "because of the repeated false assurances of Ford and its service dealership agents . . . that Ford had and would repair

United States District Court
For the Northern District of California

any problems with the engine in [p]lainiffs' vehicle that occurred during the express warranty period." FAC ¶ 14. That is in essence an allegation of fraud, but is not pled with particularity. Moreover, the assertion is not plausible, in light of the allegations of repairs required during the period before the express warranty period expired in September 2009 – which should have been sufficient to put plaintiffs on notice of the alleged defects which they claim rendered the truck a "lemon."

It seems clear that plaintiffs had "reason to suspect" that those claims existed by 2008 – or by October 2009 at the latest. The four-year period to file suit thus elapsed in October 2013. Plaintiffs failed to file suit until February 2014. For that reason, the breach of express warranty claim is time-barred.

**CONCLUSION**

In accordance with the foregoing, the court finds that Ford's motion must be GRANTED. Plaintiffs having failed to allege facts showing that the statute of limitations should be tolled, and having provided no suggestion as to how they might amend the complaint to overcome the limitations bar, the dismissal is without leave to amend. Because the claims are time-barred, the court does not address Ford's argument that it was entitled to deduct for excess wear and tear on the truck, or its argument that the claim for declaratory relief should be dismissed as derivative of the Song-Beverly Act claim.

**IT IS SO ORDERED.**

Dated: December 24, 2014

PHYLLIS J. HAMILTON
United States District Judge