1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                        NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11   MICHAEL DURKEE, et al.,

12            Plaintiffs,                    No. C 14-0617 PJH

13        v.                                 **ORDER DENYING PLAINTIFFS'**
                                             **MOTION TO ALTER, AMEND, OR**
14   FORD MOTOR COMPANY,                     **VACATE THE JUDGMENT**

15            Defendant.
     _____/

16

17        Before the court is the motion of plaintiffs Michael Durkee and Leslie Durkee

18   pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) to reconsider the order

19   granting defendant Ford Motor Company's motion to dismiss the first amended complaint

20   ("FAC"), and the judgment entered in this case on December 24, 2014.  Having read the

21   parties' papers and carefully considered their arguments and the relevant legal authority,

22   the court hereby DENIES the motion.

23                                  **BACKGROUND**

24        In the original complaint, which was filed on February 10, 2014 as a proposed class

25   action, plaintiffs alleged four causes of action in connection with an allegedly defective truck

26   manufactured and sold by Ford – a claim for breach of warranty under the Song Beverly

27   Consumer Warranty Act, Cal. Civ. Code § 1790, et seq. ("Song-Beverly Act"); a claim of

28   unfair business practices under California Business and Professions Code § 17200; a claim

1    under the Consumer Legal Remedies Act, Cal. Civ. Code § 1770, et seq.; and a claim for

2    declaratory relief.

3         Ford filed a special motion to strike pursuant to California's Anti-SLAPP Statute, Cal.

4    Civ. P. Code § 425.16, which was denied on August 7, 2014.  Ford also filed a motion to

5    dismiss the complaint for failure to state a claim, which was granted on September 9, 2014,

6    with leave to amend as to only the Song-Beverly Act claims.  (The declaratory relief claim

7    was derivative of the Song-Beverly Act claims.)

8         Plaintiffs filed the FAC on September 30, 2014.  The gist of the FAC was that Ford

9    had breached the express and implied warranties, and had violated the Song-Beverly Act

10   by demanding that plaintiffs pay for excessive wear and tear to an eight-year old truck as a

11   condition for repurchase or replacement.  Ford moved to dismiss the FAC, and the court

12   granted the motion on December 24, 2014.

13        In the order dismissing the FAC, the court found that plaintiffs had purchased the

14   truck on July 28, 2005, for $61,707.20; that the express five-year warranty had begun to

15   run on September 17, 2004, the date the truck was purchased by the original owner; that in

16   late 2012 or early 2013, plaintiffs contacted Ford with a demand that Ford repair or replace

17   the truck under the "Lemon Law" provisions of the Song-Beverly Act; that Ford responded

18   with a letter offering either a replacement or refund, but stating that plaintiffs would be

19   responsible for "missing equipment, abnormal wear or damages evidence on [the] vehicle

20   (i.e., worn tires, missing radio, cracked windshield)" and that any missing equipment or

21   abnormal wear or damage must be corrected prior to completion of the reacquired vehicle

22   transaction; and that Ford subsequently advised plaintiffs they would responsible for paying

23   $10,000 for major body damage to the truck.

24        The court reviewed the history of the repairs, as detailed in FAC and an attached

25   document entitled "Warranty Repairs."  The court found that the implied warranty expired at

26   the latest on September 17, 2005; that the express five-year warranty expired on

27   September 17, 2009; and that the breach of warranty claim accrued no later than October

28   19, 2009.  Thus, the court found, because the four-year limitation period expired as of

United States District Court
For the Northern District of California

2

United States District Court

For the Northern District of California

October 19, 2013, and plaintiffs did not file suit until February 10, 2014, the plaintiffs' claims were time-barred.    The court noted that plaintiffs had argued in opposition to the motion to dismiss that the expiration of the warranty period should be tolled by operation of the delayed discovery rule, but found based on the allegations in the FAC as well as the arguments plaintiffs had previously made in opposition to Ford's special Anti-SLAPP motion to strike, that it was clear that plaintiffs had "reason to suspect" that their claims existed by October 2009 at the very latest.

**DISCUSSION**

A.    Legal Standard

A motion to reconsider a final appealable order is appropriately brought under either Federal Rule of Civil Procedure 59(e) or 60(b).  Fuller v. M.G. Jewelry, 950 F.2d 1437, 1442 (9th Cir. 1991).  Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000); see also Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011).  Motions for reconsideration should not be frequently made or freely granted.  Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir.1980).

Under Rule 60(b),

the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 59(e) allows a party to seek an order altering or amending a judgment.  Rule 59(e) does not describe the conditions under which a court should reconsider a prior decision, but courts have determined that reconsideration under Rule 59(e) is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed a clear

3

United States District Court
For the Northern District of California

1  error or the initial decision was manifestly unjust, or (3) if there is an intervening change in

2  controlling law." <u>Sissoko v. Rocha</u>, 440 F.3d 1145, 1153-54 (9th Cir. 2006).

3      A motion for reconsideration "may not be used to relitigate old matters, or to raise

4  arguments or present evidence that could have been raised prior to the entry of judgment."

5  <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 485 n.5 (2008) (referring to Rule 59(e)); <u>see</u>

6  <u>also</u> <u>Casey v. Albertson's Inc.</u>, 362 F.3d 1254, 1259-61 (9th Cir. 2004) (referring to Rule

7  60(b)); <u>Kona Enters</u>, 229 F.3d at 890 (interpreting Rule 59(e)).  The sole exception is when

8  the court has committed "clear" or "manifest" error.  However, mere disagreement with a

9  court's order does not provide a basis for reconsideration.  <u>See</u> <u>McDowell v. Calderon</u>, 197

10  F.3d 1253, 1256 (9th Cir. 1999).

11  B.    Plaintiffs' Motion

12      Plaintiffs filed the present motion on January 21, 2015.  They contend that

13  reconsideration is warranted because the court committed clear error in dismissing the FAC

14  without leave to amend, and because the court's decision was manifestly unjust.  Ford filed

15  an opposition to the motion on February 16, 2015.  Plaintiffs filed no reply to the opposition.

16      Plaintiffs argue that in dismissing the breach of warranty claims as time-barred, the

17  court failed to apply controlling California law – specifically California Civil Code § 1795.6,

18  which tolls a warranty period

19      for the period from the date upon which the buyer either (1) delivers
20      nonconforming goods to the manufacturer or seller for warranty repairs or
       service or (2) . . . notifies the manufacturer or seller of the nonconformity of
21      the goods up to, and including, the date upon which (1) the repaired or
       serviced goods are returned to the buyer, (2) the buyer is notified the goods
22      are repaired or serviced and are available for the buyer's possession . . . .

23  Cal. Civ. Code § 1795.6.

24      Plaintiffs contend that based on the information that was before the court, there can

25  be no doubt that September 17, 2009 was not the day the warranty expired.  They note that

26  they argued in opposition to the motion to dismiss the FAC that because the "Warranty

27  History" showed 55 "days in service" as of the last listed repair prior to October 19, 2009,

28  that meant that the truck had spent 55 days in the shop for repairs, and that under

4

§ 1795.6, the warranty period was tolled for at least 55 days.

Plaintiffs also assert that because "reasonable minds could differ" as to whether plaintiffs had reason to suspect by October 19, 2009 that their claims existed, and that a fact-finder "could decide the plaintiffs' claims did not accrue until February 2012," the case should not have been decided on a motion to dismiss.

Second, plaintiffs assert that denying further leave to amend the complaint was manifestly unjust. They note that in opposing the motion to dismiss, they requested leave to amend to correct any perceived deficiencies, and argue that the court improperly found that they had "provided no suggestion as to how they might amend the complaint to overcome the limitations bar." They assert that it was the court's job to tell them what should be added to the complaint to overcome the limitations bar, and feel it was unfair that they were not provided an additional opportunity to amend the complaint.

Plaintiffs contend that they can add a number of allegations that "may overcome" the limitations bar, including allegations relating to various theories of tolling. Specifically, they argue that their claims were tolled during the pendency of the Navistar action, an MDL case pending in the U.S. District Court for the Northern District of Illinois, which involved allegations of defects in the same Ford engine that is in plaintiffs' truck. That case settled on a class-wide basis, and that the court granted preliminary approval of the settlement in November 2012, and final approval in July 2013. Plaintiffs opted out of the settlement class at some point in 2013, and now argue that even if their Song-Beverly Act claims accrued by October 19, 2009, or even earlier, this case nevertheless was timely filed because their claims against Ford were tolled for three years, until they opted out of the nationwide class action in 2013.

In yet another argument, plaintiffs assert that the doctrine of equitable tolling applies to delay accrual of the statute of limitations, because Ford had notice of "the existence and nature of" plaintiffs' claims in the Navistar action, as well as the plaintiffs' decision to exclude themselves from the settlement in that case. Here, they appear to be conflating the California doctrine of equitable tolling, with tolling under American Pipe & Constr. Co. v.

5

United States District Court

For the Northern District of California

1   Utah, 414 U.S. 538 (1974).

2   In opposition, Ford asserts that plaintiffs made the same Civil Code § 1795.6 tolling

3   argument in opposition to the motion to dismiss the FAC; that Ford responded to this

4   argument in its brief; and that the issue was addressed at length at the hearing.  Thus, Ford

5   asserts, while the order granting the motion to dismiss did not specifically cite that statute,

6   the issue was fully briefed and fully considered by the court.

7   Ford also contends that plaintiffs could have raised their equitable tolling argument

8   at any time, but waited until after entry of final judgment.  Ford notes that this argument is

9   based on facts plaintiffs did not previously allege, and which they have never mentioned

10  until now.  Ford contends that there is no authority that permits a party to assert wholly new

11  arguments in a motion for reconsideration.  As for plaintiffs' assertion that the court should

12  consider this new equitable tolling argument because plaintiffs previously argued that the

13  limitations period should be tolled, Ford responds that plaintiffs' prior argument was that the

14  limitations period should be tolled based on fraudulent concealment – which the court

15  rejected after providing plaintiffs with an opportunity to amend, because plaintiffs were

16  unable to plead particularized facts as required by Rule 9(b) – not that it should be tolled

17  based on the pendency of the Navistar MDL.

18  Ford argues further that the court did not err in dismissing the FAC without leave to

19  amend.  Ford contends that the court properly found that the allegations in the FAC as well

20  as in the attached document entitled "Warranty Repairs" showed that plaintiffs had a

21  reason to suspect a breach of warranty well before the expiration of the warranty period.

22  Ford also argues that it was plaintiffs' burden to plead facts supporting their claims

23  regarding accrual, delayed discovery, and tolling, but did not do so, and that as the court

24  found in the order dismissing the FAC, the facts plaintiffs did allege were sufficient to show

25  that a reasonable person should have suspected a breach more than four years before

26  plaintiffs filed suit.  Ford also devotes a substantial portion of its opposition brief to a

27  discussion of why plaintiffs are not entitled to either equitable tolling or American Pipe

28  tolling.

United States District Court

For the Northern District of California

1    The motion for reconsideration is DENIED.  Plaintiffs are attempting to relitigate

2    matters that were previously considered by the court, and to raise new arguments that

3    should have been previously asserted.  In particular, plaintiffs previously argued that the

4    limitation period for their Song-Beverly Act claims was tolled by operation of Civil Code

5    § 1795.6, and that the accrual of the cause of action should be tolled by operation of the

6    delayed discovery rule.  In addition, as reflected in the pleadings, motion papers, and

7    hearing transcripts on the court's docket for this case, the question whether plaintiffs'

8    breach of warranty claims were time-barred has plainly been on the table repeatedly

9    throughout the pendency of this case.

10    After plaintiffs filed the original complaint on February 10, 2014, Ford filed a special

11    motion to strike pursuant to California's anti-SLAPP statute.  See Doc. 8.  The briefing and

12    hearing schedule for the motion was extended because plaintiffs failed to file an opposition

13    within the time allowed under the Civil Local Rules of this court.

14    Once plaintiffs did file an opposition, Ford responded, and for the first time raised the

15    statute of limitations issue in its reply.  See Doc. 20, filed July 2, 2014, at 7-8 ("Assuming

16    [p]laintiffs are correct that the fourth [repair] attempt on October 19, 2009, is the date they

17    discovered Ford could not reasonably repair their vehicle, then the four-year statute of

18    limitations on [p]laintiffs' claim would have run on October 19, 2013.").

19    The court issued an order on August 7, 2014, denying the motion on the ground that

20    Ford had not made a prima facie showing that plaintiffs' claims "arise from" Ford's

21    protected activity.  See Doc. 26.  The court did not address Ford's argument that plaintiffs

22    were not likely to prevail in the lawsuit (including the argument that the Song-Beverly Act

23    claim was time-barred).

24    Ford also filed a motion to dismiss the complaint for failure to state a claim, on July

25    8, 2014.  Again, Ford asserted that the four-year statute of limitations on plaintiffs' Song-

26    Beverly claim ran "at the latest, on October 19, 2013."  See Doc. 21, filed July 8, 2014, at 8

27    n.3.  Plaintiffs' opposition to the motion was due on July 22, 2014.  On July 21, 2014,

28    plaintiffs filed an administrative motion seeking an extension of time to respond.  Because

7

1  the Civil Local Rules allow an opposing party four days to respond, which in this case

2  would have been after the date the opposition was due, the court did not have an

3  opportunity to rule on the motion.  Plaintiffs filed their opposition on July 22, 2014.  Plaintiffs

4  did not respond to Ford's argument regarding the statute of limitations, and Ford did not

5  raise it in the reply.

6       The court heard argument in the motion to dismiss on August 20, 2014.  The notice

7  of motion clearly stated that the motion would be heard on August 20, 2014, at 9:00 a.m.

8  Nevertheless, plaintiffs' counsel arrived 40 minutes late for the hearing, which had

9  commenced in his absence.  See Doc. 31, Aug. 20, 2014, Hearing Transcript, at 9.  He

10  explained that he "had this set as a 10:00 o'clock hearing."  Id.

11       During the argument, the court asked plaintiffs' counsel how plaintiffs had

12  discovered that the truck was a lemon, as they claim, and why it took them ten years to

13  discover it was a lemon.  Id. at 26.  Counsel did not directly respond to the court's

14  questions, instead stating that "typically, what happens" is a customer does not realize a

15  vehicle is a lemon until after the warranty period had expired.  Id. at 27.

16       The court then asked whether the plaintiffs in this case had a ten-year warranty.  Id.

17  Counsel responded that they had a five-year warranty, and acknowledged that claims

18  under the Song-Beverly Act are subject to a four-year limitation period.  Id.  The court

19  asked counsel whether plaintiffs had filed the lawsuit within the limitations period.  Counsel

20  responded, "They did.  They bought it on 7-28.  They filed on 2-10 of '14.  And so if you go

21  7-28-05 plus five is 7-28-10.  And four years on top of that is 7-28-14.  They filed in

22  February of '14."  Id.

23       Counsel added, "So the footnote in their brief that says the subject of the statute of

24  limitations may not apply.  And that's assuming that immediately upon expiration of the

25  warranty is the discovery.  But in reality what happens is it's not until that next intermittent

26  problem occurs with this engine that actually triggers the discovery where they bring it in

27  . . ."  Id. at 27-28.  The court asked, "Discovery by whom?"  Counsel responded, "By the

28  customer . . . "  Id. at 28.

United States District Court

For the Northern District of California

1    The court issued an order granting the motion on September 2, 2014.  See Doc. 29.

2    The court dismissed the CLRA and UCL claims with prejudice, but granted leave to amend

3    the Song-Beverly Act claim, to plead facts sufficient to state a claim.  The court

4    acknowledged Ford's argument that the Song-Beverly Act claim was time-barred, but

5    stated that the issue was "not presently before the court" because Ford had raised it in the

6    context of a filing in a separate motion.  Sept. 2, 2014 Order at 9 n.1.  However, that was

7    certainly sufficient to advise plaintiffs that the question whether the claim was time-barred

8    could well be an issue in the case.

9    Plaintiffs filed the FAC on September 30, 2014.  See Doc. 32.  They alleged that the

10   warranty period commenced with the initial sale of the truck to the original owner on

11   September 17, 2004.  FAC ¶¶ 11-12.  In listing the various engine-related repairs to the

12   truck over the time they owned it, plaintiffs included an incident on October 19, 2009 – "The

13   vehicle was emitting white smoke and had to be towed in.  When [p]laintiffs were permitted

14   to pick up the vehicle, Ford represented that the problem was fixed."  FAC

15   ¶ 13(f).  They then alleged that "the same engine related problems" occurred in the Fall of

16   2012, and that this "first post-warranty repair" was the first time they discovered or could

17   have discovered the breach.  FAC ¶ 14.  However, the "first post-warranty repair" actually

18   occurred on October 19, 2009, and plaintiffs alleged no facts showing that any

19   circumstances that warranted tolling the limitation period.

20   Ford again moved to dismiss for failure to state a claim.  See Doc. 33.  In this

21   motion, Ford argued that plaintiffs had effectively conceded that all of their warranty claims

22   had accrued no later than October 19, 2009.  Thus, Ford asserted, the statute of limitations

23   had therefore run by October 19, 2013, and plaintiffs' warranty claims were time-barred.

24   In opposition, plaintiffs argued that the truck's "Warranty History" showed that the

25   October 19, 2009 repair was covered under the warranty, and that "even if the discovery

26   date was October 19, 2009, [p]laintiffs have properly pled that the statute of limitations has

27   been tolled as a result of Ford's false assurances that Ford would repair any problem with

28   the engine in [p]laintiffs' vehicle that occurred during the express warranty period."

1    See Doc. 34 at 2.

2        Plaintiffs also claimed that they did not discover the breach until the Fall of 2012,

3    when they took the truck in for "the same problems the vehicle had experienced during the

4    warranty period." Id. at 4.  They asserted that they were "not pleading fraud, but rather

5    facts that satisfy the delayed discovery rule." Id. at 6.  Finally, they asserted that the

6    "Warranty History" showed that the truck had "time in service" of 55 days, which plaintiffs

7    interpreted as a history of "the number of days the vehicle was in for service," and that

8    under Civil Code § 1795.6, the warranty period was extended for that additional 55 days.

9    Thus, they asserted, the October 19, 2009 repair fell within the warranty period. Id. at 5-6.

10       At the December 10, 2014, hearing on the motion, Ford's counsel argued that while

11   plaintiffs had pleaded facts showing the accrual date, but they hadn't pleaded facts to show

12   delayed discovery, to show an inability to discover the claim, or to show that discovery was

13   delayed by fraudulent concealment of the cause of action.  See Dec. 10, 2014 Hrg. Tr.

14   (Doc. 41) at 3-5.

15       In response, plaintiffs' counsel argued that because the "Warranty Repairs" list of

16   repairs attached to the FAC showed 55 "days in service," which he claimed was "a

17   cumulative number of days that the car, the vehicle was at Ford and not in the customer's

18   hands," the reason the October 19, 2009, repair "shows up on that Warranty Repair is

19   because there's still 55 days left on the warranty, and that is why Ford offered, and did, do

20   yet another repair in October of '09," and why the first "non-warranty repair" occurred in the

21   Fall of 2012. Id. at 13-14.

22       He added that the delayed discovery rule did apply, "from and after that first

23   discovery because it is the acts of Ford in which they know, every time they fix the usual

24   suspects, the EGR valve, the burning through of the plastic thing or a boost, a leaking

25   boost . . ." Id.  When the court attempted to ascertain which of the repairs were for the

26   alleged engine defects, counsel was unable to explain anything about the alleged repair in

27   the Fall of 2012 for the "same engine-related problems," which plaintiffs have referred to as

28   the "first post-warranty repair" which under plaintiffs' theory of the case triggered the

United States District Court
For the Northern District of California

1 │ accrual of plaintiffs' claims.

2 │      On December 24, 2014, the court issued an order granting the motion to dismiss,

3 │ and dismissing the Song-Beverly Act claims with prejudice on the basis that they were

4 │ time-barred.  The court found that the claim for breach of express warranty had accrued as

5 │ of October 19, 2009 by the very latest.  The court noted that the "Warranty History" that

6 │ plaintiff attached to the FAC was simply a list of repairs performed on the truck at the Ford

7 │ dealership from February 17, 2005 through September 28, 2011.

8 │      The court thoroughly summarized the repairs listed on the "Warranty History," and

9 │ found that plaintiffs had reason to at least suspect a breach of warranty well before the end

10 │ of the warranty period.  Indeed, the court noted, plaintiffs had argued in opposition to Ford's

11 │ anti-SLAPP motion to strike that they had "presented the vehicle to Ford with severe

12 │ engine problems at least four times," citing to incidents in May 2008, February 2009, and

13 │ October 2009.  The court also found that plaintiffs had alleged no facts showing how they

14 │ were prevented from discovering the alleged breach of warranty prior to Fall 2012.

15 │      It is true that the court did not directly address plaintiffs' argument that the warranty

16 │ period had been extended under Civil Code § 1795.6 for at least 55 days based on the

17 │ recorded "time in service."  Primarily, the reason was that the court agreed with Ford that

18 │ plaintiffs' claim that "time is service" refers to the number of days that a vehicle is in the

19 │ shop for repairs was not plausible, and that the only plausible explanation was the one

20 │ provided by Ford in its reply in support of its motion to dismiss the FAC – that "time in

21 │ service" refers to the number of months since the warranty start date.

22 │      The first repair listed on the "Warranty History" was for the 1.5 "labor hours" for the

23 │ 5000 mile service on February 17, 2005.  At that time, the "time in service" was "6."  The

24 │ warranty start date was September 17, 2004.  The sixth month following the warranty start

25 │ date began February 17, 2005.  The second repair listed was for .8 "labor hours" to inspect

26 │ and repair an oil leak, on July 5, 2005.  The "time in service" was "10."  The tenth month

27 │ following the warranty start date began June 17, 2005.  The third repair listed was for 1.1

28 │ "labor hours" to inspect battery and replace battery, battery cable, and starter, on

United States District Court
For the Northern District of California

1    September 23, 2005.  The "time in service" was "13."  The thirteenth month from the

2    warranty start date began on September 17, 2005.

3          Following all down the list of repairs on the "Warranty History," the court finds that

4    Ford's interpretation is plausible and that plaintiff's interpretation of "time in service" as

5    referring to "days in the shop" is not.  For example, the "Warranty History" shows two

6    repairs in June 2006 – one for 1.3 "labor hours" for the 20,000 mile service, on June 24,

7    2006, and one for 2.5 "labor hours" to replace worn tie rod ends, on June 27, 2006.  The

8    "time in service" was "22" for both these dates.  The twenty-second month following the

9    warranty start date began June 17, 2006.  If "time in service" referred to the number of

10   days in the shop for repairs, both those dates would not show the same number.

11   Moreover, in addition to more standard "repairs," the "Warranty History" lists periodic

12   "quality care service" (the 5,000, 10,000, 15,000, 20,000, 25,000, 30,000, and 45,000 mile

13   service) as well as service for "recalls."  A total of 13 repair dates are listed, from February

14   17, 2005 through October 19, 2009.  The "time in service" for October 19, 2009 is "62,"

15   which plausibly means 62 months since the start of the warranty, but does not plausibly

16   translate into 62 days in the shop.

17         As for plaintiffs' claim that the court should have provided instruction as to what is

18   required to plead operation of the delayed discovery rule, the court disagrees.  First, the

19   issue was briefed by the parties, and arguments on that subject were addressed at the

20   hearings on the motions to dismiss.  At the hearing on the motion to dismiss the original

21   complaint, the court attempted to elicit from plaintiffs' counsel some information as to when

22   the plaintiffs had discovered the alleged breach, and why it had taken them "ten years to

23   discover they had a lemon," but was unsuccessful.

24         Subsequently, in the FAC, plaintiffs included no allegations of facts showing what

25   had prevented them from discovering the defects until (as they claim) February 2012,

26   notwithstanding the alleged history of repairs.  Again, plaintiffs provided no indication to the

27   court in their opposition to the motion to dismiss the FAC, or at the time of the hearing on

28   the motion as to what additional facts they might allege to show that their claims were not

time-barred.  Indeed, they argued in their opposition that they had adequately alleged facts showing operation of the delayed discovery rule.  The court found based on the allegations in the FAC and plaintiffs' prior arguments in opposition to Ford's special motion to strike that plaintiffs' warranty claims had accrued no later than October 19, 2009.

The law regarding the operation of the delayed discovery rule in California is clear, as are the standards governing pleading in federal court.  Contrary to plaintiffs' position, it is not the court's burden to advise plaintiffs regarding legal theories, or regarding what facts they must allege to support their claims.  As for the arguments regarding equitable tolling and American Pipe tolling, the court agrees with Ford that these arguments were not previously presented to the court, and do not provide a proper basis for a motion for reconsideration.  As a final note, the court considers it significant that plaintiffs did not bother to file a reply to Ford's opposition to the motion for reconsideration.

### CONCLUSION

In accordance with the foregoing, the court finds that plaintiffs' motion must be DENIED.  The date for the hearing on this motion, previously noticed for March 18, 2015, is VACATED.

**IT IS SO ORDERED.**

Dated:  March 13, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge

13